UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN SINGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Case No. 4:23-CV-01359-SPM |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Leland Dudek, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Brian Singer ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 5). For the reasons stated below, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] Leland Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    FACTUAL BACKGROUND

At the hearing before the ALJ on November 16, 2022, Plaintiff testified as follows. Plaintiff has migraine headaches, and there is rarely a day that goes by that he does not spend time in bed, "just because the headache pain is so bad." (Tr. 46). He also has anxiety and treatment-resistant depression. (Tr. 47). He is in bed every day for an hour to an hour and a half at a time. (Tr. 50). He tries to get up and find things to do, but if it hurts too bad, he lies back down. (Tr. 50). How many times he lies down depends on how bad the headache is. (Tr. 52). The headache makes it hard to think, focus, and concentrate. (Tr. 51). He takes a narcotic pain medication, but the pain medication has not been very effective for the past six months or so. (Tr. 52). He had some medial branch blocks that took his pain from around level six to a level five on a one-to-ten pain scale. (Tr. 52-53). He has been seeing the same neurologist for nine to ten years. (Tr. 53). He described two instances where he tried to do yard work, but every fifteen minutes or so his head hurt so bad he had to go in the house and lie down. (Tr. 54-55).

With regard to the medical records, the Court accepts the facts as set forth in the parties' respective statements of fact and responses. Briefly, the medical records show that Plaintiff has consistently complained to his treatment providers of daily headaches, sometimes severe; has sought treatment from a neurologist, a pain management doctor, and an ear, nose, and throat ("ENT") specialist to try to address his headaches; has undergone various diagnostic procedures (including a CT scan, an MRI, a nasal endoscopy, a diagnostic cervical medial branch block at C2/3); has been diagnosed with intractable migraine headaches; and has undergone numerous treatments related to his migraines, including Aimovig injections, Emgality injections, Xtampza ER (an extended release form of oxycodone), chiropractic treatments, and ketamine infusion, with little relief. He has also sought regular treatment for depression and anxiety, and his complaints to

his mental health providers are typically largely focused on the effects of his headaches on his mood, concentration, and/or motivation.

The record contains opinion evidence addressing Plaintiff's physical impairments from three sources. On October 16, 2020, Plaintiff's treating neurologist, Michelle Wood, D.O., completed a Medical Source Statement indicating that Plaintiff had daily headaches at an intensity of 5-6/10 with stabbing and throbbing pain around his head; that the headaches increase in severity at times to around 10/10 in intensity; that Plaintiff would need to take unscheduled breaks of 15-20 minutes two to three times during the workday; that he would likely be off task 25% of the time; and that he would likely miss work or leave early because of his conditions more than four days per month. (Tr. 471-73). On October 20, 2022, Dr. Wood completed a Medical Statement Regarding Headaches stating that Plaintiff had migraine headaches and chronic daily transferred migraines, with associated photophobia and increased sensitivity to noise. (Tr. 942). She also stated he was unable to work while suffering a headache. (Tr. 942). On December 3, 2020, medical consultant James Weiss, M.D., reviewed the available medical records and opined that Plaintiff had no exertional, postural, manipulative, visual, or communicative limitations but should avoid concentrated exposure to noise and avoid all exposure to hazards due to his migraines. (Tr. 95-97). On May 24, 2022, Michael O'Day, D.O., reviewed the available medical records and opined that Plaintiff had some exertional limitations and that, due to his migraines, he should avoid concentrated exposure to noise and vibration and should avoid all exposure to hazards. (Tr. 120-23).

## II.   PROCEDURAL BACKGROUND

In September 2020, Plaintiff applied for DIB, alleging that he had been unable to work since October 16, 2017, due to migraine, anxiety, and depression. (Tr. 218, 241). He subsequently

3

amended his onset date to October 5, 2019. (Tr. 235-36). His application was denied initially and on reconsideration. (Tr. 105, 132). On February 8, 2023, following a hearing, the ALJ issued an unfavorable decision. (Tr. 7-30). On August 28, 2023, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner.

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also, e.g., McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the

4

Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### IV.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff did not engage in substantial gainful activity from October 5, 2019, the amended alleged onset date, through his date last insured of December 31, 2022; that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, coronary artery disease, essential hypertension, migraines, major depressive disorder, and generalized anxiety disorder; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 12-13). The ALJ found that Plaintiff had the following RFC:

> Through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: [Plaintiff] can lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently. He can stand/walk for about 6 hours and sit for up to 6 hours in an 8 hour work day, with normal breaks. He can occasionally climb ladders, ropes or scaffolds. He should avoid concentrated exposure to excessive noise which is defined as any noise above noise level 3. He should avoid concentrated exposure to excessive vibration and operational control of moving machinery. He should avoid moderate exposure to unprotected heights. He should avoid exposure to hazardous machinery. His work is limited to simple and routine tasks. His work should be in a low stress job, defined as having only occasional changes in the work setting. He cannot perform work that requires hourly quotas. He should have only occasional interaction with the public, co-workers and supervisors.

(Tr. 15). At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work through the date last insured. (Tr. 22). At Step Five, relying on the testimony of a vocational expert,

the ALJ found that through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including representative occupations such as retail clerk, janitor, and laundry folder. (Tr. 22-23).

### V.   STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two

7

inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004), & *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## VI. DISCUSSION

Plaintiff argues that the ALJ failed to properly assess Plaintiff's migraines, both in assessing whether Plaintiff's impairments medically equaled a listing at Step Three and in assessing Plaintiff's subjective complaints of pain related to his migraines and the effect of that pain on the RFC. Because Defendant's argument for why the ALJ adequately assessed Plaintiff's migraines at Step Three finding references and relies on the ALJ's discussion of Plaintiff's RFC and subjective complaints, *see* Def.'s Br., ECF No. 13, at 6, the Court begins with the ALJ's assessment of Plaintiff's subjective complaints.

### A. The ALJ's Assessment of Plaintiff's Migraines in Assessing Subjective Complaints and RFC

In assessing a claimant's RFC, the ALJ must consider, along with the other relevant evidence, "the claimant's subjective complaints of pain." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). In analyzing the limiting effects of subjective complaints, the ALJ considers the claimant's statements about his or her pain and other symptoms; information from medical sources and nonmedical sources about the claimant's functional limitations and restrictions; objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity

8

of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of the pain or other symptoms; any measures the claimant uses or has used to relieve the pain or other symptoms (e.g., lying flat on one's back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(a),(c). *See also Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), & *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)); Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *7-*8 (Oct. 25, 2017). The ALJ must "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to [the ALJ's] conclusions." SSR 16-3p, 2017 WL 5180304, at *8. "[T]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. The Court will defer to the ALJ's assessment of a claimant's subjective complaints where the assessment is "supported by good reasons and substantial evidence." *Schwandt v. Berryhill,* 926 F.3d 1004, 1012 (8th Cir. 2019).

Here, the ALJ acknowledged the above standards, summarized the medical evidence, and found that Plaintiff's "subjective complaints are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 17-22). However, after review of the ALJ's decision and the record as a whole, it is not at all clear how the ALJ reached that conclusion. Although the ALJ

9

mentioned Plaintiff's migraines at several points in the opinion, the ALJ did not mention the principal limitation Plaintiff alleged related to those migraines—his testimony that his headaches get so bad that must lie down down in bed for an hour or more at a time, something that occurs most days and sometimes more than once in a day.[2] The ALJ also does not explain how any of the evidence in the record is inconsistent with these allegations, nor it is it apparent to the Court. To the contrary, the record as a whole appears to be consistent with these allegations. Plaintiff repeatedly reported daily headaches to his treatment providers, and those reports included statements that his headaches ranged in intensity from 2/10 to 7/10 (Tr. 522), that he spent over half his days in bed because of the severity of his pain (Tr. 780-71), that some days he is in bed sobbing in pain (Tr. 607), that he is hesitant to plan anything because he may have to cancel it at the last minute due to an increase in pain severity (Tr. 606), and that his ability to participate in life is variable because of his pain (Tr. 601). Plaintiff's neurologist repeatedly diagnosed him with "migraine without aura, intractable, with status migrainosus," treated him with narcotic pain medications and injectable medications, and opined that Plaintiff had daily chronic migraine headaches that would cause him to need to take frequent breaks, would cause him to be off-task

---

[2] Defendant argues that Plaintiff's large amounts of time spent in bed were not only due to his migraines, but were also correlated to his symptoms of depression and anxiety. The Court acknowledges that although Plaintiff's testimony was that "there's rarely a day that goes by that I don't spend time in bed, just because the headache pain is so bad" (Tr. 46), and that how often he lies down "just depends how bad the headache is" (Tr. 51), there is other evidence in the record that suggests that Plaintiff also spent time in bed due to his depression and anxiety. However, it is unclear how that fact would support a finding that the ALJ properly evaluated Plaintiff's subjective complaints. Where, as here, a claimant has more than one severe impairment, the ALJ is required to "consider the combined impact of the impairments throughout the disability determination process." 20 C.F.R. § 404.1523. *See also* 20 C.F.R. § 404.1545(a)(2) ("[W]e will consider all of [the claimant's] medically determinable impairments of which we are aware . . . when we assess your residual functional capacity."). Even if Plaintiff's limitations were caused by the combination of Plaintiff's migraines and Plaintiff's mental impairments, the ALJ was still required to consider those limitations in assessing Plaintiff's subjective complaints and formulating the RFC.

more than 25% of the time, and would cause him to miss work or leave early more than four times a month. (Tr. 430, 432, 559, 471-72). Although Plaintiff at times reported some improvement with medication, the record suggests that the improvement was limited and short-term, and Plaintiff continued to pursue new solutions to his headaches. Even after reporting to his neurologist that he got some relief from narcotic pain medication and injectable medication, Plaintiff continued to seek new treatments from new specialists (including an ENT, a chiropractor, and a pain management doctor), and he underwent various diagnostic tests, including MRIs, CT scans, a nasal endoscopy, and a diagnostic cervical medial branch block. None of these efforts appeared to yield significant relief. (Tr. 430, 432, 522-23, 530-32, 559-60, 566-72, 670, 696, 780-85, 791-96, 798-802, 803-07).

It appears that the ALJ may have, in assessing the limiting effects of Plaintiff's migraines, considered that imaging of Plaintiff's brain was largely unremarkable, that physical examinations were largely normal, and that the consultative physical examination revealed no abnormalities. (Tr. 19).[3] However, as courts have frequently recognized, migraine headaches cannot be proven or disproven by physical examinations or objective findings. *See Vancil v. Saul*, No. 4:18-CV-55 NAB, 2019 WL 4750443, at *2 (E.D. Mo. Sept. 30, 2019) ("Because migraines constitute a subjective complaint, objective evidence conclusively showing whether a person suffers from

---

[3] Defendant argues that the ALJ's citation to normal imaging of the brain and normal physical findings was not part of the ALJ's assessment of Plaintiff's migraines, but was rather part of a thorough discussion of the longitudinal treatment record in relation to all of Plaintiff's impairments. That is not the Court's reading of the ALJ's decision. The ALJ mentioned unremarkable brain imaging in a short summary paragraph addressing the reasons for the physical RFC finding, immediately after a sentence discussing Plaintiff's migraines. (Tr. 19). It is unclear what other physical impairment the brain imaging would have been relevant to. However, even assuming, *arguendo*, that the ALJ did not rely on these normal objective findings to determine that Plaintiff's migraines were not as frequent or severe as he claimed, that does not change the Court's conclusion that the ALJ failed to provide an adequate explanation of his assessment of Plaintiff's migraines.

them is impossible to find.") (quoting *Carrier v. Berryhill*, CIV-1-5086-JLV, 2017 WL 885019 at *5 (D.S.D. Mar. 6, 2017)); *Williams v. Kijakazi*, No. 4:20 CV 1493 DDN, 2022 WL 823062, at *11 (E.D. Mo. Mar. 18, 2022) (finding that it was error for an ALJ to discount claims of migraine headaches based on a normal MRI; noting that "[n]either the occurrence nor the severity of migraine headaches is specifically detectable through such testing" and that "the Court is not aware of a requirement that the severity of migraines be proven through objective clinical findings."). Thus, physically normal examinations provide little to no support for discounting subjective complaints of migraine headaches.

It also appears that the ALJ may have considered Plaintiff's daily activities in assessing the limiting effects of his migraines: the ALJ noted that Plaintiff was able to prepare meals, perform household chores, drive, go out alone, shop in stores, manage his finances, read in his spare time, and perform yard work for about 15 minutes before he experiences a headache. (Tr. 16). Certainly, daily activities inconsistent with subjective allegations may undermine such allegations. However, as Plaintiff argues, it is unclear how the activities listed are inconsistent with the specific allegations in this case. Plaintiff does not allege that he was consistently unable to engage in any daily activities, but rather that when his headaches get bad, he has to lie in bed for an hour to an hour and a half at a time. He also told his therapist that his ability to participate in life is "variable" because of his pain, and that he is hesitant to plan anything because he may have to cancel it at the last minute due to an increase in pain severity. (Tr. 601, 606). The ability to shop in a store, manage finances, or perform yard work for 15 minutes is not inconsistent with his allegations regarding the effects of migraine headaches of variable intensity that only sometimes become so severe that he cannot function. *See, e.g., Wegleitner v. Kijakazi*, 2023 WL 2645657, at *6 (E.D. Mo. Mar. 27, 2023) (finding it was "unclear" how activities such as living independently, preparing simple

meals, performing light household chores, handling money, and shopping were inconsistent with the plaintiff's statements that she had three to four migraines per week than went away after two to four hours).

The Court is mindful of its obligation to defer to the ALJ's assessment of the subjective complaints. However, in light of the lack of the discussion in the ALJ's decision of Plaintiff's allegations regarding how his migraines limit him, the lack of a clear explanation of what evidence the ALJ found inconsistent with Plaintiff's allegations, the ALJ apparent reliance on evidence that is not actually inconsistent with Plaintiff's allegations, and the large amount of medical and other evidence that appears consistent with Plaintiff's allegations, the Court finds that the ALJ did not adequately explain how he assessed Plaintiff's subjective complaints related to her migraines. Moreover, given the vocational expert's testimony that an employer would not tolerate daily unscheduled breaks, 10% time off-task, or monthly absences (Tr. 62), it appears the ALJ might have reached a different determination regarding Plaintiff's ability to work if the ALJ had given more weight to Plaintiff's allegations of migraine pain.

Because the ALJ did not adequately explain how he assessed Plaintiff's subjective complaints, the Court cannot determine whether the ALJ's RFC assessment is supported by substantial evidence. Thus, remand is required. *See, e.g.*, *Wegleitner v. Kijakazi*, No. 4:22-CV-67 RWS, 2023 WL 2645657, at *6 (E.D. Mo. Mar. 27, 2023) (finding that because "the ALJ did not adequately explain the purported inconsistencies between [the plaintiff's] statements regarding the frequency and severity of her migraines and the evidence in the record," the Court was "unable to determine whether the ALJ properly discounted [the plaintiff's] statements" and was "unable to determine whether his decision is supported by substantial evidence"; remanding and directing the ALJ to "specifically address the frequency and severity of [the plaintiff's] migraines and explain

13

in greater detail why her statements regarding the frequency and severity of her migraines were (or were not) credible"). *See also Heather Dian D. v. O'Malley*, No. 1:23 CV 206 JMB, 2024 WL 4650847, at *7 (E.D. Mo. Nov. 1, 2024) (remanding where "the ALJ did not conduct an adequate analysis of Plaintiff's subjective complaints of migraines"). On remand, the ALJ should conduct a new analysis of Plaintiff's subjective complaints of migraine headache pain that is consistent with the record and the relevant regulations.

### B. The ALJ's Step Three Finding

Plaintiff also argues ALJ failed to meaningfully assess Plaintiff's migraines at Step Three. At Step Three, a claimant has the burden of proving his impairment meets or medically equals a listed impairment. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). Although there is no listing directly addressing headaches, Social Security Ruling 19-4p states that "Epilepsy (listing 11.02) is the most closely analogous listed impairment for a [medically determinable impairment of] primary headache disorder" and that "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her [medically determinable impairment] medically equals the listing." Social Security Ruling SSR 19-4p; Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635, at *7 (Aug. 26, 2019).

Plaintiff argues that his migraines medically equal listing 11.02B, which "requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id.* To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the ALJ considers "a detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena

14

(for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)." *Id.*

Here, in evaluating Plaintiff's migraines at Step Three of the decision, the ALJ stated:

> The claimant's headaches/migraines are not directly addressed by a listing. As indicated in SSR 19-4p covering headache disorders, the most comparable listing is listing 11.02 on epilepsy. The documented frequency and severity of the claimant's headaches does not rise to the level described in this listing.

(Tr. 13).

Plaintiff argues that the ALJ's conclusory statement regarding the frequency and severity of Plaintiff's headaches, without further explanation, cannot be said to be supported by substantial evidence. Plaintiff also points to the medical evidence discussed above suggesting that Plaintiff had daily migraines despite compliance with treatment, arguing that this evdience supports a finding that his migraines equaled listing 11.02B.[4]

Defendant argues that the articulation requirements at Step Three are not high, that generally a statement that an impairment does not medically equal a listed impairment is sufficient, and that the ALJ's articulation "at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding

---

[4] Plaintiff also argues that the ALJ committed error under HALLEX I-2-6-5 by failing to rule on Plaintiff's request, made at the hearing, for a medical expert to assess medical equivalence. For the reasons stated in Defendant's brief, the Court finds Plaintiff's argument is without merit.

15

about medical equivalence at step 3." *Id.* Defendant then argues that the ALJ's findings regarding the effects of Plaintiff's migraines on the RFC support the Step Three finding.

The basis for the ALJ's Step Three finding, as articulated by the ALJ and the Defendant, appears to be the same as the basis for the ALJ's assessment of Plaintiff's subjective complaints: the ALJ's conclusion that Plaintiff's headaches were not as severe or frequent as he claimed. As discussed above, however, it is unclear how the ALJ reached this conclusion. The medical records do not appear to support this conclusion; instead, they appear to be consistent with Plaintiff having severe headaches at least once a week, despite adherence to treatment, which at least suggests that Plaintiff's migraines may equal a listing describing "dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." Absent some additional explanation and analysis from the ALJ, the Court cannot determine whether the ALJ's Step Three finding is supported by substantial evidence, and the Court finds remand is required. *See, e.g.*, *Nail v. Kijakazi*, No. 4:20 CV 1422 CDP, 2022 WL 832328, at *7 (E.D. Mo. Mar. 21, 2022) (holding the ALJ's Step Three finding that migraines did not equal listing 11.02 was not supported by substantial evidence because, as discussed in the court's assessment of the RFC analysis, "the ALJ's subsequent discussion of [the plaintiff's] headaches demonstrates that the ALJ did not consider all of the evidence relating to [the plaintiff's] continuing headaches and did not consider the effects of [the plaintiff's] continuing headaches on his functional abilities" and because medical evidence suggested a frequency of headaches required by listing 11.02). *See also Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008) (remanding for the ALJ to address whether impairments met or equaled a listing; stating, "[d]ue to inconsistencies in the record, which the ALJ failed to address, we are unable to determine whether substantial evidence supports

16

the ALJ's finding . . . ."). On remand, the ALJ should re-evaluate whether Plaintiff's migraines equal listing 11.02 and should explain the evidence in the record that supports his conclusions.

### VII. CONCLUSION

For the reasons set forth above, the Court cannot determine whether the decision of the Commissioner is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of March, 2025.